IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


WASTE MANAGEMENT INC.,     :
et al.,

        Plaintiffs,             :     Case No. 3:00-cv-256

      v.

DANIS INDUSTRIES             :     JUDGE WALTER H. RICE
CORPORATION, et al.,

        Defendants.

---

DECISION AND ENTRY OVERRULING DEFENDANTS' RENEWAL OF
MOTION FOR SANCTIONS UNDER RULE 11 (DOC. #554) AND
DEFENDANTS' MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927
(DOC. #553)

---

Pending before the Court are Defendants' Renewal of Motion for Sanctions

under Rule 11 (Doc. 554) and Motion for Sanctions under 28 U.S.C. § 1927 (Doc.

#553), which assert that Plaintiffs' veil-piercing claim was not warranted, had no

basis in fact, and justifies sanctioning Plaintiffs' attorneys. For the reasons set

forth below, Defendants' motions are OVERRULED.

I.     **RELEVANT FACTUAL & PROCEDURAL BACKGROUND**

This section presents only the background relevant to the issue of sanctions

in the motions before the Court. A more detailed presentation of the extensive

factual background of this case may be found in the Court's Opinion Setting Forth Findings of Facts and Conclusions of Law of February 10, 2009. Doc. #512.

In 1983, Defendant Danis Industries Corporation ("Danis") sold a number of corporate subsidiaries to Plaintiffs Waste Management, Inc., and Waste Management of Ohio, Inc. Among the assets (or liabilities, as the case turned out to be) that Plaintiffs acquired in the transaction was the Valleycrest Landfill. Danis agreed to indemnify Plaintiffs for liabilities that resulted from the landfill's operations prior to the sale. After the Environmental Protection Agency ("EPA") added the Valleycrest Landfill to the National Priorities List of contaminated sites in the United States in 1994, Plaintiffs faced liability for its cleanup under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). *See* National Priorities List for Uncontrolled Hazardous Waste Sites, 59 Fed. Reg. 27,989 (May 31, 1994) (codified at 40 C.F.R. § 300 App. B). Danis and Plaintiffs litigated the indemnification issue before reaching a settlement in December of 1997.

In addition, other parties had possible CERCLA liabilities arising from a historical interest in the Valleycrest Landfill. Plaintiffs and Danis entered into several agreements with those parties in May, 1998, under which Plaintiffs and Danis agreed to be responsible for 46% of the landfill's cleanup costs. Danis made payments until August, 1999, before defaulting on its obligation. After the default, Plaintiffs paid over $15 million in cleanup costs.

2

Danis' inability to satisfy its indemnification obligation to Plaintiffs resulted from a corporate restructuring, or "recapitalization/split-off transaction," that it had undergone in October of 1997, which preceded the settlement agreement it had reached with Plaintiffs by several months. Before the transaction, Danis had been a wholly owned subsidiary of The Danis Companies ("TDC"). In addition, Danis Building Construction Company ("DBCC") had been a wholly owned subsidiary of Danis Construction Company, which, in turn, was a wholly owned subsidiary of Danis. Under the recapitalization/split-off transaction, 10 of the 11 Class A shareholders of TDC redeemed their TDC shares for the collective payment of $26.5 million and the shares of DBCC, while the eleventh shareholder, Tom Danis, ended up owning 80% of the shares of TDC. When the transaction was implemented, the assets of DBCC, as well as the $26.5 million, had been removed from Danis, which was without sufficient assets to satisfy its obligation to indemnify the Plaintiffs for the environmental liabilities associated with the Valleycrest Landfill. In addition, after the implementation of the recapitalization/split-off transaction, there was no cross-ownership between TDC and DBCC, so that no person owning shares of TDC was also a shareholder of DBCC, and vice versa. Prior to the closing of the recapitalization/split-off transaction, TDC's shareholders were aware of Danis' potential liability for the Valleycrest Landfill.

On May 22, 2000, Plaintiffs filed suit against Danis, TDC, Danis Environmental Management Group, and John Danis, for breach of contract and

3

CERCLA contribution, seeking to enforce Danis' obligation to share in the cost of the Valleycrest Landfill cleanup.  Doc. #1.  In addition, Plaintiffs asserted claims of fraudulent transfer under Ohio Rev. Code § § 1336.04-05 against John Danis and unnamed "John Doe" TDC shareholders who were members of the Danis family, alleging that they had implemented the recapitalization/split-off of Danis and TDC to shift $33 million in assets from Danis, due to its obligations to Plaintiffs.

Plaintiffs filed an Amended Complaint on October 13, 2000, adding the individual shareholders by name and other Danis family companies as Defendants. Doc. #21.  The Amended Complaint contained the following twelve claims: breach of contract against Danis, for breach of the 1997 indemnification/settlement agreement, based on Danis' failure to pay its share of the expenses for the cleanup of the Valleycrest Landfill (Count 1); a separate breach of the same agreement by Danis, for failing to pay costs to defend a lawsuit brought by neighbors of the Valleycrest Landfill (Count 2); breach of the May, 1998, CERCLA agreements concerning the Valleycrest Landfill (Count 3); declaratory judgment (Count 4); piercing the corporate veil (Count 5); a CERCLA contribution claim under 42 U.S.C. § 9613(f) (Count 6); fraud and constructive fraud pertaining to the 1997 indemnification/settlement agreement (Count 7); fraud and constructive fraud pertaining to the May, 1998, CERCLA agreements (Count 8); negligent misrepresentation pertaining to the May, 1998, CERCLA agreements (Count 9); fraudulent conveyance (Count 10); conveyance to hinder, delay or defraud creditors (Count 11); and civil conspiracy (Count 12).

4

Of particular relevance here is Count 5 of the Amended Complaint, "Disregard of the Corporate Form," which sought to pierce the corporate veil of TDC, Danis, and subsidiaries. Doc. #21 ¶¶ 64-65. Plaintiffs alleged that the shareholders used those entities as alter-egos of themselves, and, in doing so, violated several Ohio statutes, as well as Plaintiffs' rights under the indemnification/settlement agreement and the CERCLA agreements. Plaintiffs alleged that the 1997 recapitalization/splitoff transaction allowed the Danis family shareholders to remove $33 million in assets from TDC and Danis, thereby burdening those companies with debt and intentionally depriving them of the assets required to fulfill the indemnification obligation to Plaintiffs.

The Court entered an indemnity judgment in Plaintiffs' favor on March 18, 2003. Doc. #141. The final amount of the judgment, which was against Danis and its subsidiary, Diversified Environmental Management Company, was determined to be $15,188,370. Doc. #236; Doc. #513 (Entry of Judgment).

On April 17, 2003, the shareholder Defendants moved for partial summary judgment against Plaintiffs on the veil-piercing/alter-ego claims. Doc. #160. The next day, Defendants' attorney sent a letter to Plaintiff's counsel demanding the withdrawal of the "derivative claims" against the shareholder Defendants, with an enclosed copy of a Motion for Sanctions. Doc. #554-1. On June 19, 2003, the Motion for Sanctions was filed with the Court. Doc. #216.

On February 24, 2004, the Court entered summary judgment in favor of the shareholder Defendants on the veil-piercing claim, finding that the undisputed

5

evidence showed that none of them had exercised sufficient control over TDC such that the corporation had no separate mind or will of its own. Doc. #236. The Court also overruled the Motion for Sanctions without prejudice. *Id.*

The Motion for Sanctions was renewed on April 23, 2004. Doc. #245. On August 24, 2004, the Court again overruled the motion without prejudice, and advised the shareholder Defendants that it could be renewed after the resolution of the remaining claims at trial. Doc. #355.

On February 10, 2009, final judgment for defendants was entered on all claims tried before the Court that had not been disposed of by summary judgment. Doc. #513. Thereafter, on April 22, 2009, the shareholder Defendants again filed a Motion for Sanctions under Rule 11 (Doc. #518), with the addition of a Motion for Sanctions under 28 U.S.C. § 1927 (Doc. #519). On February 26, 2010, the Court entered an order permitting limited discovery on the issues raised by the motions and overruled them without prejudice, recognizing that the issues raised therein might ultimately be shaped by the results of the discovery. Doc. #547.

On March 24, 2011, Defendants Charles W. Danis, Jr., Richard R. Danis, Amy L. Danis, Julie M. Danis and John S. Danis (collectively, the "Moving Defendants") filed a Renewal of Motion for Sanctions under Rule 11, seeking the imposition of sanctions against 1) Plaintiffs Waste Management Inc., and Waste Management of Ohio, Inc.; 2) attorneys Richard L. Sullivan, Edward F. Busch, Jennifer Fust-Rutherford, and the firm of Conliffe, Sandmann, & Sullivan, who represented Plaintiffs from the filing of the Amended Complaint onwards; and 3)

6

Plaintiffs' in-house counsel, Steven M. Morgan. Doc. #554. On the same day, the Moving Defendants renewed their Motion for Sanctions under 28 U.S.C. § 1927 against Plaintiffs' attorneys Richard L. Sullivan, Edward F. Busch, Jennifer Fust-Rutherford, and their in-house counsel, Steven M. Morgan.[1] Doc. #553.

Plaintiffs and their attorneys filed Responses in Opposition on May 2, 2011. Doc. #560, 561, & 562. The Moving Defendants filed Reply Briefs on May 31, 2011. Doc. 565 & 566.

On June 14, 2011, the Court received a letter from counsel indicating that the Moving Defendants had resolved the sanctions under Rule 11 against the Plaintiffs, but not their attorneys, and the sanctions under 28 U.S.C. § 1927 against Steven M. Morgan only. Doc. #570 at 3. The Court inadvertently overruled the both motions in their entirety based on this information, but they were subsequently reopened on the Court's docket, as they were directed against the remaining parties. *See* Notation Orders of June 17, 2011.

On August 15, 2011, Respondent Richard M. Sullivan filed a Supplemental Memorandum in Opposition to the Moving Defendants' Motions for Sanctions. Doc. #572. The motions are fully briefed and ready for the Court's ruling.

---

[1] Defendants did not caption the motion as Renewed Motion for Sanctions, although it was a renewal of their April 22, 2009, motion brought under 28 U.S.C. § 1927. *Compare* Doc. #519 *with* Doc. #553.

II.   **RENEWAL OF MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11
      (DOC. #554) AGAINST ATTORNEYS RICHARD L. SULLIVAN,
      EDWARD F. BUSCH, JENNIFER FUST-RUTHERFORD, AND THE FIRM
      OF CONLIFFE, SANDMANN, & SULLIVAN**

Under Rule 11 of the Federal Rules of Civil Procedure, "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented."  The signature also acts as a certification "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the pleading, written motion, or other paper complies with four requirements, two of which are relevant here.  Fed. R. Civ. P. 11(b).  The first requirement is that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  *Id.* 11(b)(2).  The second requirement is that any "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  *Id.* (b)(3).  The Supreme Court has observed that "the central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts."  *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990).  "Although the Rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, [] any interpretation must give effect to the Rule's central goal of deterrence."  *Id.*

8

The test for whether a Rule 11 violation warrants sanctions is "whether the attorney's conduct was reasonable under the circumstances." *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997). "In determining whether a violation of Rule 11 has occurred, the district court is not to use the benefit of hindsight but 'should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.'" *McGhee v. Sanilac Cnty*, 934 F.2d 89, 93 (6th Cir. 1991) (*quoting INVST Fin. Group, Inc. v. Chem–Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir. 1987)).  The Moving Defendants seek sanctions based only on the veil-piercing claim brought by Plaintiffs.  The Court will first consider whether Plaintiff's veil-piercing claim was "warranted by existing law or a nonfrivolous argument for extending" Ohio's veil-piercing law, and will then consider whether Plaintiff's counsel failed to conduct a reasonable evidentiary investigation into the claim.

### A.  Existing Law Warranted the Bringing of Plaintiffs' Veil-Piercing Claim

Defendants argue that Plaintiffs presented an "eccentric and [un]supportable interpretation" of Ohio law to support their veil-piercing claim. Doc. #554 at 6. According to Defendants, Plaintiffs collapsed the existing three-prong test that Ohio courts employ for piercing a corporate veil into a simple test of "unfairness." *Id.* at 6-7.  Defendants also attack Plaintiff's contention that mere undercapitalization, or undercapitalization preceded by violation of an Ohio statute

9

that limits an entity's ability to purchase its own shares, was sufficient to justify a piercing of TDC's corporate veil. *Id*. at 8-10.

In response, Plaintiffs argue that their interpretation of Ohio's veil-piercing law was reasonable, even if was ultimately not accepted by the Court, and Defendants have presented an "overly rigid" interpretation of that law to support their Rule 11 motion. Doc. #561 at 18-26. Plaintiffs contend that their arguments were non-frivolous because they relied on valid authority to support their legal arguments, as well as persuasive authority from other jurisdictions. *Id.* at 26-36.

As stated, an attorney may violate Rule 11 by filing a pleading containing a claim that is not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." For a legal position to be frivolous under Rule 11, "it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Neighborhood Research Inst. v. Campus Partners for Comm. Urban Dev.*, 212 F.R.D. 374 (S.D. Ohio 2002) (quoting *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 167 (2d Cir.1999)).

As both parties recognize, the controlling Ohio law of corporate veil-piercing was set forth by the Ohio Supreme Court in *Belvedere Condominium Unit Owners' Ass'n. v. R.E. Roark Cos.*, 617 N.E.2d 1075 (1993), which adopted the holding of the Sixth Circuit in *Bucyrus-Erie Co. v. General Prods. Corp*., 643 F. 2d 413 (6th Cir. 1981)). In *Belvedere*, the Ohio Supreme Court held that:

10

the corporate form may be disregarded and individual shareholders
held liable for corporate misdeeds when (1) control over the
corporation by those to be held liable was so complete that the
corporation has no separate mind, will, or existence of its own, (2)
control over the corporation by those to be held liable was exercised
in such a manner as to commit fraud or an illegal act against the
person seeking to disregard the corporate entity, and (3) injury or
unjust loss resulted to the plaintiff from such control and wrong.

617 N.E.2d 1086.

This Court granted summary judgment in favor of the Moving Defendants on
the veil-piercing claim, based on the first *Belvedere* prong, finding that the
undisputed evidence showed that there was no "complete" shareholder control
over TDC that eliminated its "separate mind, will or existence." Doc. #236 at 31-
32. The Court set forth the process for examining the first *Belvedere* prong by
stating the following:

In order ascertain whether the first prong of the Belvedere test has
been met, Ohio courts have examined whether the corporate
formalities have been observed, whether corporate records have been
kept, whether corporate funds have been commingled with personal
funds, whether corporate property was used for personal purposes
and whether the corporation is inadequately capitalized.

*Id.* (citing to Ohio cases).

The Court placed great weight on the evidence that showed that all of
TDC's corporate formalities had been followed, including regular meetings by the
board of directors and by shareholders. *Id.* at 32-33. Furthermore, TDC's board of
directors was composed of shareholders and non-shareholders, and TDC had an
accounting staff and financial records that were independently audited. *Id.* at 33.
Plaintiffs failed to present any contradictory evidence that showed irregularities in

11

TDC's corporate formalities, the commingling of funds, or a shareholder treating corporate property as personal property. *Id.*

Although the Plaintiffs failed to prevail on the veil-piercing claim they brought against the Moving Defendants, the Court cannot conclude that the claim was unwarranted by existing law or frivolous. Plaintiffs brought their claim under the theory that Ohio law would allow a court to disregard the corporate entity and attach personal liability to shareholders who, as family members in a closely-held corporation, worked together to shift the assets from one corporation with a staggering environmental liability to another entity. Ohio courts do not hesitate to pierce the corporate veil and impose liability on shareholders who manipulate the corporation to shield assets from creditors. For example, in *Longo Construction, Inc. v. ASAP Technical Services, Inc.*, 748 N.E.2d 1164 (Ohio Ct. App. 2000), an Ohio Court of Appeals upheld a trial court judgment that pierced the veil of a general contractor corporation and imposed liability on its principal shareholder after he transferred $500,000 to his wife from the corporation in order to avoid paying a subcontractor for work.

Ohio courts also recognize that shareholders of a closely-held corporation may act in concert to achieve such ends. In *Atlantic Veneer Corporation v. Robbins*, No. 01CA678, 2002 WL 31230338 (Ohio Ct. App. Sept. 27, 2002), the husband and wife shareholders of a closely-held corporation were unable to exploit the corporate form to shield money that the husband had embezzled from his employer. They used the money to build a home and then transferred their interest

12

in it to a trust, as well as half of the shares of a closely-held corporation named after the wife.  The Ohio Court of Appeals upheld the trial court's determination that the transfers were made with the intent to prevent the employer from collecting on a judgment that it had obtained against the husband for the embezzlement.  Consequently, the court found that the closely-held corporation was the alter ego of the husband and wife and pierced the corporate veil.  *Atlantic Veneer* was decided after the filing of the Amended Complaint, but before the Moving Defendants filed their first Rule 11 Motion.

*Atlantic Veneer* also demonstrates that Ohio courts may be satisfied with a minimal showing on *Belvedere*'s first prong.  The Ohio Court of Appeals accepted the mere fact that the husband and wife were "the sole shareholders, directors, and officers" of the closely-held corporation as "competent, credible evidence" that they exercised complete control over the corporation, thereby satisfying the first *Belvedere* prong.  *Atlantic Veneer Corp.*, 2002 WL 31230338 at *8.  While this Court cannot agree that such a showing is sufficient, as it appears to equate the mere fact that a corporation is closely held with an automatic satisfaction of the first *Belvedere* prong, *Atlantic Veneer* <u>does</u> demonstrate that it was not objectively unreasonable for Plaintiffs to believe that Ohio law warranted bringing a veil-piercing claim against an undercapitalized, closely-held corporation.

The Moving Defendants reserve particular criticism for the Plaintiffs' interpretation of *Belvedere*, stating that they "argued that its holding could be collapsed into a simple test of 'unfairness.'"  Doc. #554 at 6.  According to the

13

Moving Defendants, to support their interpretation, Plaintiffs quoted language from *AT&T Global Information Solutions Co. v. Union Tank Car Co.*, 29 F.Supp.2d 857, 868 (S.D. Ohio 1998), that the *AT&T* court made only in its discussion of the second and third prongs of the *Belvedere* test, including "Ohio courts construing *Belvedere* have held that *Belvedere* allows a corporate veil to be pierced when inequitable or unfair consequences had resulted." 29 F.Supp.2d at 868. According to the Moving Defendants, this was "intentionally misleading," and they quote a footnote from this Court's Decision granting them summary judgment on the veil-piercing claim stating that Ohio law required them to "establish all three prongs of *Belvedere*. They cannot recover on their piercing the corporate veil claims merely by showing that it would be unfair if someone does not pay the amount Danis agreed to pay by entering into the Settlement Agreement." Doc. #554 (quoting Doc. #236).

Although this Court stated that *Belvedere* required a showing under each of its prongs, it was objectively reasonable for Plaintiffs to believe that Ohio law provided a somewhat more flexible framework for bringing a veil-piercing claim. Ohio courts have often quoted language from *Bucyrus-Erie Co. v. General Products Corp.*, 643 F.2d 413, 418 (6th Cir. 1981), the case that formed the basis for the *Belvedere* holding, which stated that "[n]o precise test for disregarding the corporate fiction has been articulated by the courts, each case being regarded as 'sui generis' and decidable on its own facts." *Longo* cited its own precedent to quote this language from *Bucyrus-Erie*. *Longo*, 748 N.E.2d at 1169; *see also Yo–*

14

*Can, Inc. v. Yogurt Exchange, Inc.*, 778 N.E.2d 90 (Ohio Ct. App. 2000) (citing *Longo*) *and State ex rel. DeWine v. S & R Recycling, Inc.*, 961 N.E.2d 1153, 1159 (Ohio Ct. App. 2011) (citing *Yo-Can*). This is logical, as the equitable nature of the veil-piercing remedy requires a court to exercise some sensitivity to the unique factual circumstances of every case. Such flexibility is demonstrated by the analysis in *Longo*, which considered two of *Belvedere*'s elements in tandem. The *Longo* court found that the shareholder's decision to have the corporation draft a check to him for $500,000 demonstrated the control required by the first *Belvedere* prong, as well as the fraud required by the second prong. *See Longo*, 748 N.E.2d at 1169 (stating that "[o]ur discussion of the first Belvedere factor informs our discussion of the second factor").

Furthermore, the entirety of the Court's footnote that the Moving Defendants quote does not support the contention that Plaintiffs' interpretation of *AT&T* was intentionally misleading. Rather, the Court found their interpretation to be irrelevant. Plaintiffs had quoted a passage from *AT&T* that concerned the third prong of *Belvedere*, but it could not save their claim, because the Court had "conclude[d] that the evidence fails to raise a genuine issue of material fact on the first element of that test; therefore, there is no need to consider the third prong." Doc. #236.

Finally, in spite of the Moving Defendants' contention that the Plaintiffs presented the law of veil-piercing as only requiring some showing of "unfairness," the Plaintiffs' claim was based on more. Plaintiffs also claimed the alleged

15

corporate undercapitalization could support the first prong of *Belvedere*, as well as the allegations of statutory violations. The Court rejected the idea that undercapitalization, standing alone, demonstrated shareholder control of the corporate will. However, it was objectively reasonable to present an argument that undercapitalization *might* satisfy the first *Belvedere* prong. *Belvedere* did not set out what demonstrates "control over the corporation by those to be held liable [that is] so complete that the corporation has no separate mind, will or existence of its own," but other courts have explained that undercapitalization is one factor to consider. In fact, this Court stated precisely that when listing the "alter ego" factors:

> In order ascertain whether the first prong of the Belvedere test has been met, Ohio courts have examined whether the corporate formalities have been observed, whether corporate records have been kept, whether corporate funds have been commingled with personal funds, whether corporate property was used for personal purposes and whether the corporation is inadequately capitalized. *Frechette v. Kavande*, 2001 WL 390069 (Ohio App. 2001); *Willoway Nurseries v. Curdes*, 1999 WL 820784 (Ohio App. 1999).

Thus, undercapitalization was a factor that even this Court recognized might support Plaintiffs' claim. It was simply not enough, when there were no other indicia of shareholder control, for their claim to survive the first prong of *Belvedere*.

In short, Plaintiffs' attorneys presented a veil-piercing claim that was "warranted by existing law" at the time they filed the Amended Complaint. The claim was, therefore, not "frivolous," nor were they required to make an argument

16

for the extension or modification of existing law. Consequently, Plaintiffs'
attorneys did not violate Rule 11(b)(2).

**B.    Plaintiffs' Counsel Did Not Falsely Certifiy the Evidentiary Basis for the
Veil-Piercing Claim**

Defendants assert that Plaintiffs' counsel's certification of evidentiary
support was false because the Court determined that they had no evidence to
support *Belvedere*'s first element of a veil-piercing claim. Doc. #554 at 11-13.
According to Defendants, this lack of evidence also demonstrates the inadequacy
of Plaintiff's pre-filing inquiry, leading them to conclude that Plaintiffs' attorneys
made a false certification under Rule 11. *Id.* at 13. Because of these alleged
violations of Rule 11, Defendants argue that sanctions should be imposed upon
Plaintiffs' attorneys. *Id.* at 14-16.

In response, counsel for Plaintiffs argue that they reviewed 40,000 pages of
documents and expended 246 hours in research of the facts and law before
drafting the Complaint, demonstrating a reasonable pre-filing inquiry. *Id.* at 36-38.
They point to what they considered "considerable" evidence to support the veil-
piercing claim, even if it was ultimately unsuccessful. *Id.* at 38-42. Finally, they
argue that none of the factors that courts use to decide whether sanctions are
warranted support the imposition of sanctions against them. *Id.* at 42-49.

Rule 11(b)(3) requires a signing attorney or party to certify that the "factual
contentions [within a pleading] have evidentiary support or, if specifically so

17

identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." The Advisory Committee Notes explain that:

> The certification is that there is (or likely will be) "evidentiary support" for the allegation, not that the party will prevail with respect to its contention regarding the fact. That summary judgment is rendered against a party does not necessarily mean, for purposes of this certification, that it had no evidentiary support for its position.

Fed. R. Civ. P. 11, 1993 Advisory Committee Note.

Plaintiffs' counsel made a reasonable pre-filing inquiry into the evidentiary basis for the veil-piercing claim. Although they tout the number of documents and the number of hours that their pre-filing inquiry consumed, the reasonableness of their inquiry depends on what those efforts unearthed. For example, they discovered a 1996 Arthur Anderson report showing that shareholders were aware of Danis' environmental liability and were considering a restructuring plan of the corporate entities. Plaintiffs knew that TDC and its subsidiary, Danis, were closely-held companies controlled by a family of shareholders. Furthermore, Plaintiffs had come to know that while they were litigating the 1983 indemnification agreement with Danis, TDC paid out $33 million in assets to its shareholders just several months before the settlement agreement was reached. Their attorneys' investigation had uncovered memoranda and documents from the recapitalization/split-off transaction informing the Danis shareholders that the liability owed to Plaintiffs could exceed the net worth of the company. Furthermore, the documents named several family shareholders as members of TDC's "Stakeholder Committee" involved in the planning of the

18

recapitalization/split-off transaction. TDC provided its financial statements for 1997 and 1998 to Plaintiffs in 2000, which, when compared with the statement from 1996, showed the $33 million decrease in assets, $26.5 million of which was in cash. The case for shareholder manipulation was, at that point, purely inferential, but it was not imaginary. Based on the foregoing, Plaintiffs conducted a reasonable pre-filing inquiry.

By the time Plaintiffs received the Moving Defendants' Motion for Summary Judgment and the letter threatening a Rule 11 motion, Plaintiffs had collected enough evidence to justify not withdrawing the veil-piercing claim, based on a review of the exhibits submitted in support of their Memorandum in Response. *See* Doc. #221. In 1994, the company and its shareholders were aware that the environmental liability might be as high as $40 million. Discovery had produced communications between two shareholders planning the corporate reorganization. Notes from a shareholder meeting two years before the recapitalization/split off transaction occurred showed that the potential liability was discussed. Plaintiffs may not have uncovered a smoking gun, but they did not continue to litigate with no evidence or contradictory evidence, which would support a Rule 11 motion.

For example, in *Ghee v. Sanilac County*, 934 F.2d 89 (6th Cir. 1991), the Sixth Circuit held that Rule 11 sanctions were appropriate when an attorney filed a defamation claim based on statements made in a newspaper that his client admitted were true. The claim was litigated through summary judgment, even after the client was deposed and admitted the truth of the published statements.

19

Here, in contrast, there was no evidence that directly contradicted the veil-piercing claim. Plaintiffs uncovered evidence that the shareholder Defendants knew of the liability that their company faced, and planned a restructuring to insulate their assets from the debtor entity. Rule 11 does not permit a court to impose sanctions for actions that, with the benefit of hindsight, seem futile. *McGhee*, 934 F.2d at 93. Plaintiffs did not have the benefit of knowing that the Court would impose a standard for veil-piercing under *Belvedere* too demanding for the evidence that they had mustered when they refused to withdraw the claim and responded to Defendants' Motion for Summary Judgment. In short, they made no false certification to the Court regarding the basis for their claim, a claim which was warranted by existing law. For those reasons, the Moving Defendants' Motion for Sanctions under Rule 11 is overruled.

### C. No Fee Award to the Prevailing Party

"If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion" for sanctions. Fed. R. Civ. P. 11(c)(2). As the Advisory Committee Notes to the 1993 Amendment state, "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." Plaintiffs argue that they are entitled to an award of fees for defending against the Moving Defendants' Rule 11 motion. Doc. #561 at 42. Although Plaintiffs have prevailed in the sense that they have successfully defended themselves from sanctions under Rule 11, the Court does

20

not feel that an award of reasonable expenses or attorneys' fees is appropriate. The Court does not agree with Plaintiffs' contention that the Moving Defendants' "reading of *Belvedere* is obviously and knowingly incorrect," which leads them to conclude that there "has been no plausible basis for the four Rule 11 sanctions motions." *Id.* Contrary to Plaintiffs' assertion, the Moving Defendants' reading of *Belvedere* is more in accord with its mainstream application than Plaintiffs' interpetation. Plaintiffs have prevailed in defending against the Rule 11 motion because there was a reasonable basis for the interpretation of *Belvedere* that they presented when they filed the Amended Complaint and defended the veil-piercing claim on summary judgment, not because they were ultimately correct. Obviously, they were not, as the Court's reading of *Belvedere* and the standards for bringing a veil-piercing claim were more exacting than Plaintiffs' reasonable interpretation of same. Just as the Court has determined that Plaintiffs' veil-piercing claim was not unwarranted, the same conclusion applies to the Moving Defendants' perception that a reasonable basis existed for filing a motion under Rule 11. Accordingly, the Court declines to award reasonable costs or fees to Plaintiffs.

### III. MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1928 (DOC. #553)

The Moving Defendants have also filed a Motion for Sanctions under 28 U.S.C. § 1927. The statute authorizes the imposition of "excess costs, expenses, and attorneys' fees" on an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." Sanctions under Section 1927 do not require a

21

finding that the attorney's conduct resulted from "bad faith" or "conscious impropriety." *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 395 (6th Cir. 2009) (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir.1986)). "Under this objective standard, '§ 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence.'" *Id.* (quoting *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir.2006)).

The Moving Defendants adopt their Rule 11 arguments in support of the Motion for Sanctions under 28 U.S.C. § 1927. The Court has determined that Plaintiff's understanding of Ohio veil-piercing law, although unsuccessful, was not unwarranted, and enough inferential evidence existed to support their claim that their pre-filing inquiry and continued litigation of the claim was not unreasonable. Accordingly, there is no baseline showing of "negligence or incompetence" that would merit the imposition of sanctions under 28 U.S.C. § 1927. Without an explanation of Plaintiffs' unreasonable or vexatious behavior that does not simply repeat the rejected arguments for Rule 11 sanctions, the Court discerns no basis for imposing other sanctions. Accordingly, the Moving Defendants Motion for Sanctions under 28 U.S.C. § 1927 is overruled.

IV.    **CONCLUSION**

For the reasons set forth above, the Court OVERRULES Defendants'

Renewal Motion for Sanctions under Rule 11 (Doc. #554) and Defendants' Motion

for Sanctions under 28 U.S.C. § 1927 (Doc. #553).


Date: September 12, 2014

 

WALTER H. RICE
UNITED STATES DISTRICT JUDGE